UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-4168 MRW | Date | November 10, 2016 |
|---|---|---|---|
| Title | West Pak Avocado v. Americold Logistics | | |

| Present: The Honorable | Michael R. Wilner | |
|---|---|---|
| Veronica Piper | | n/a |
| Deputy Clerk | | Court Reporter / Recorder |
| Attorneys Present for Plaintiff / Petitioner: | | Attorneys Present for Defendant / Respondent: |
| None present | | None present |

**Proceedings:**   MEMORANDUM OF DECISION

   1.   The Court conducted a bench trial in this civil action. Pursuant to Rule 52(a)(1), this memorandum of decision constitutes the Court's findings of fact and conclusions of law.

* * *

   2.   The parties agreed, and the Court previously found (Docket # 20), that the Court has diversity of citizenship jurisdiction over the parties. The Court further finds that the subject of the dispute – the storage of the avocados – occurred in Los Angeles County. Venue is therefore proper within the Central District of California.

* * *

   3.   Among other commercial activities, Plaintiff West Pak imports avocados from South America via ships docking in the Los Angeles or Long Beach harbors. West Pak operates its own cold storage facilities in which it generally stores avocados that it imports. However, on occasions when West Pak does not have sufficient room to store avocados, it will hire an outside cold storage firm in the Los Angeles area to store avocados before they can be transported, processed, and distributed.

   4.   Avocados must be stored within a narrow temperature range. If avocados get too warm (above 42 degrees (all temperatures in Fahrenheit)), they will begin to ripen or rot before delivery to customers. If avocados get too cold (below 38 degrees), they suffer damage that can render the fruit unsalable or of lower commercial value. (Testimony of Johanson, Newhouse.)

   5.   Defendant Americold operates several cold storage facilities in Southern California. Americold has the ability to store food products at a variety of specified temperature ranges above and below freezing. (Botello Test.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-4168 MRW | Date | November 10, 2016 |
|---|---|---|---|
| Title | West Pak Avocado v. Americold Logistics | | |

      6.     West Pak and Americold had a single previous transaction in 2012. At that time, West Pak and Americold agreed that Americold would store imported West Pak avocados within a temperature range of 38-42 degrees. In the 2012 transaction, Americold safely stored West Pak's avocados at its Dominguez Hills facility without incident. The parties memorialized the deal (including the use of the Dominguez Hills site and the 38-42 degree range) in new account documentation and a rate agreement. (Ex. 20, 21.)

      7.     In July 2014, West Pak contacted Americold again to store avocados. The request was on extremely short notice: West Pak contacted Americold on the morning of July 1 for delivery of avocados in transit from Peru within a day. The avocados had a value in excess of $1 million. (Johanson Test.)

      8.     Americold was aware of West Pak's need for cold storage in the 38-42 degree range. Michael Johanson, an executive at West Pak, spoke with Peter Yee, an Americold representative, about these parameters of the storage. Americold sent West Pak a form asking about the "Required Temperature Range" for West Pak's products. In response, West Pak stated that the avocados were to be stored in the 38-42 degree range. (Ex. 23.) Further, in an internal e-mail. Yee informed other Americold personnel that the "main caveat" for West Pak's use of Americold's facilities was storage within this range. (Ex. 45.) This was consistent with the parties' previous transaction.

      9.     Johanson handled the negotiations with Americold. He credibly testified that Americold personnel told him that the company could store the West Pak avocados in its Vernon facility. Johanson was not told that the avocados would be stored at a temperature range lower than what West Pak specified as its required temperature or in a manner different than the 2012 transaction (even though a different local facility was to be used).

      10.    On July 2, the parties signed off on a summary agreement for the storage of the Peruvian avocados. The parties used a form prepared by Americold. Americold stated on the form that the avocados would be stored at the Vernon site. Americold also included text that the avocados would be stored at a colder range of 32 to 38 degrees.

      11.    The Court concludes that the rate agreement did not fairly or accurately capture the intent of West Pak regarding its product needs. Neither Johanson (negotiator of the deal) nor Randy Shoup (signatory to the deal) was subjectively aware that the rate agreement contained the lower temperature specification. Further, several West Pak witnesses with meaningful knowledge of the avocado industry – Johanson, company president Shoup, and product manager

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-4168 MRW | Date | November 10, 2016 |
|---|---|---|---|
| Title | West Pak Avocado v. Americold Logistics | | |

Kellen Newhouse (an uncontested expert witness in avocado matters) – convincingly explained that West Pak would not knowingly agree to store its avocados at a temperature below 38 degrees.

12.   In response, Derek Murphy, a business development manager at Americold, testified that West Pak agreed to the lower storage temperature. Murphy stated that he had a series of telephone calls with Johanson on July 1 and 2 in which Johanson agreed to have Americold store the avocados at the colder 32-38 degree range.

13.   From this, Murphy put the lower temperature range into the rate agreement and sent it to West Pak for signature – noting the <u>address</u> for the Vernon facility in his cover e-mail, but <u>not</u> the changed temperature. (Ex. 1 at 3.) This was despite: (a) Johanson's subjective knowledge that the lower temperature would likely harm the avocados; (b) the previous 2012 deal between the companies in which Americold agreed and was able to store the fruit in the 38-42 degree range; and (c) West Pak's 2014 written request for a 38-42 degree range. Based on the Court's observations of the witnesses at trial and the lack of corroboration of Murphy (save for the disputed rate agreement), the Court concludes that Murphy's testimony regarding his discussions with Johanson was not believable.

14.   The Court also notes the testimony and e-mail of Javier Botello, the Americold manager of several storage facilities in Southern California. Americold initially planned to store the West Pak avocados at a facility in the City of Industry which, according to Botello, was "the only site I have" with the capability to function at the 38-42 degree range that West Pak requested. (Ex. 45 at 2.) However, when the decision was made to store the avocados at the colder Vernon facility, Botello candidly stated in an internal e-mail that Johanson and West Pak were "not going to be happy in Vernon." (Ex. 45.) The Court finds by a preponderance of the evidence and its observation of the witness that this referred to the storage of West Pak's products at an improper temperature, not "good natured ribbing" between various regional managers competing for business.

15.   After the avocados had been stored at the colder temperature at Vernon for several weeks, they were shipped to a West Pak facility for processing. The West Pak staff determined in late July that many of the avocados were damaged due to exposure to cold. West Pak personnel inspected more avocados in the Vernon facility. The avocados had internal temperatures below 38 degrees. The West Pak staff observed frost or ice on the floor, but did not note temperatures below 32 degrees at the time of the inspection. (Newhouse, Camacho Test.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-4168 MRW | Date | November 10, 2016 |
|---|---|---|---|
| Title | West Pak Avocado v. Americold Logistics | | |

      16.     After further inspection, West Pak concluded that a significant number of the avocados stored at Americold suffered visible cold damage.  West Pak sold some of the damaged avocados at a lower price to customers, and disposed of others at a landfill.  The parties stipulated that the total financial loss associated with these actions was $170,107.66.  (Parties' oral stipulation.)

* * *

      17.     The Court concludes as a matter of law that Americold was negligent in its storage of the avocados.  Americold knew – from its previous 2012 dealing with West Pak, and information received contemporaneously with the 2014 transaction – that West Pak had specific requirements for its produce.  West Pak hired Americold with the expectation that Americold would store the avocados within the required temperature range.  Americold failed to abide by its duty to use due care when it took possession of West Pak's avocados and subjected them to colder temperatures than West Pak expected.  This was the proximate cause of damage to the avocados.  The Court concludes that West Pak was damaged in the amount of $170,107.66.

      18.     The Court further finds that West Pak was not comparatively negligent.  It is apparent that West Pak signed the 2014 rate agreement with the incorrect temperature range.  However, Americold failed to carry its burden of proof of demonstrating that it fairly or reasonably informed West Pak of its intent to store the avocados at a temperature below 38 degrees.  Further, West Pak reasonably could not and should not have expected Americold to insert this clearly objectionable temperature parameter into the rate agreement.  To the extent that there was a mistake in fact in the completion of the parties' agreement, the Court concludes that it is reasonable for Americold to bear the risk of its mistake under tort principles.  Cal. Civ. C. §§ 1577, 3399; <u>Donovan v. RRL Corp.</u>, 26 Cal. 4th 261, 283 (2001) (remedies for breach of contract containing mistake).

      19.     Plaintiff will promptly lodge a proposed judgment for the Court to enter.